**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2476
_____

GERONIMO LOZANO

v.

STATE OF NEW JERSEY; ELIZABETH POLICE
DEPARTMENT; SERGEANT RODNEY DORILUS;
OFFICER DAVID HERNANDEZ; OFFICER TIMOTHY
GOLDATE; UNION COUNTY; JOHN & JANE DOE 1-10;
ABC CORP. 1-10, (fictitious names for persons, firms, or
corporations presently unknown)

DAVID HERNANDEZ,
                                    Appellant
_____

On Appeal from the District Court for the
District of New Jersey
(D.C. No. 2:17-cv-06581)
District Judge: Kevin McNulty
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 9, 2021

Before: SHWARTZ, KRAUSE, and RENDELL, *Circuit
Judges*

(Opinion Filed: August 16, 2021)

Edward J. Kologi
Michael S. Simitz
Kologi & Simitz
500 North Wood Avenue
Suite 4B
Linden, NJ 07036
        *Counsel for Appellant*

David B. Owens
Andrew Small
Molod Spitz & DeSantis
1430 Broadway
21st Floor
New York, NY 10018
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge.*

It is well established that police officers must have probable cause to arrest and charge suspects. *Harvard v. Cesnalis*, 973 F.3d 190, 199–203 (3d Cir. 2020). If they do not, they may be liable for false arrest, false imprisonment, and malicious prosecution. *Id.* It is equally true, though, that officers must be personally involved in a constitutional rights violation to be held liable for it. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 284–85 (3d Cir. 2018). This case asks us to determine how extensively an officer must be involved in arresting or charging a suspect to be liable for violating the suspect's rights. As a threshold matter, we must also decide whether we have jurisdiction over a summary judgment order that denies an officer qualified immunity under the New Jersey Civil Rights Act (CRA), N.J. Stat. Ann. § 10:6–1 *et seq.* Because we conclude that we have jurisdiction over denials of qualified immunity under the CRA and that Appellant David Hernandez is entitled to qualified immunity against Appellee Geronimo Lozano's claims, we will reverse the District Court's order denying qualified immunity.

I.       **Factual & Procedural Background**

Lozano is a former Marine who was discharged for medical reasons and still suffers from multiple conditions, including severe asthma, an impaired airway, limited motion in his knees and one ankle, and total blindness in his left eye. As a result, Lozano has a handicapped parking permit and a permit for tinted windows on his car.

Late one night in 2016, Lozano was eating at a Wawa in Elizabeth, New Jersey.  His car was parked partly within a handicapped parking space and partly in the restricted area next to it.  At approximately 3:00 AM, Sergeant Rodney Dorilus arrived at the Wawa to refuel his car and noticed Lozano's vehicle.  Because Lozano has tinted windows, however, Sergeant Dorilus could not see the handicapped placard on the dashboard.  So Sergeant Dorilus investigated, eventually requiring Lozano to provide his license and registration, as well as his permits for handicapped parking and tinted windows.

Once Sergeant Dorilus confirmed that Lozano's license was valid, he asked if Lozano had consumed any alcohol.  Lozano said no.  But Sergeant Dorilus was unconvinced:  He said that Lozano "reeked of alcohol," so he told Lozano that he was going to administer a field sobriety test.  *Lozano v. New Jersey*, No. 17-cv-6581, 2020 WL 3542374, at *2 (D.N.J. June 29, 2020).  Lozano again denied having consumed any alcohol, and he refused to submit to the field sobriety test, claiming that his injuries physically prevented him from doing so.  Sergeant Dorilus then arrested Lozano.

Officer David Hernandez, along with other officers, was "present" throughout these events, *Lozano*, 2020 WL 3542374, at *2, and when Officer Hernandez first arrived at the scene, he accompanied Lozano from the Wawa outside, where Lozano spoke with Sergeant Dorilus, *see* JA 268, 280.  Bodycam videos from the officers, on which the District Court

4

relied, then show Officer Hernandez standing nearby as Sergeant Dorilus spoke with and subsequently handcuffed Lozano. After Sergeant Dorilus arrested Lozano, Officer Hernandez drove Lozano to police headquarters.

At the station, Officer Hernandez helped process Lozano by asking for his name and taking his loose clothing. Other officers then gave Lozano two breathalyzer tests, but because of his asthma, he could not provide a sufficient breath sample. Lozano alleges that he told the officer administering the tests that he was medically unable to complete them. Then, during a third breathalyzer test, Lozano had an asthma attack and had to be taken to the hospital. He never completed a breathalyzer test.[1]

The next day, Sergeant Dorilus charged Lozano with one count of driving while intoxicated, N.J. Stat. Ann. § 39:4–50, and one count of refusal to take a breath test, N.J. Stat. Ann. § 39:4–50.2. But after Lozano provided medical records showing that he physically could not perform either a field sobriety test or a breathalyzer test, the prosecutor recommended dismissing the charges and the municipal court did so.

Lozano subsequently sued Sergeant Dorilus, Officer Hernandez, and others, alleging, among other things, false

---

[1] Lozano has not alleged that Officer Hernandez was involved in administering the breathalyzer tests. *Lozano*, 2020 WL 3542374, at *9.

arrest, false imprisonment, and malicious prosecution. He brought his claims under 42 U.S.C. § 1983; the parallel cause of action in the CRA, N.J. Stat. Ann. § 10:6–2; and New Jersey common law, which is actionable against public employees when a plaintiff satisfies the requirements set forth in the New Jersey Tort Claims Act (TCA), N.J. Stat. Ann. § 59:3–1.

After discovery, Sergeant Dorilus and Officer Hernandez moved for summary judgment, but the District Court denied their motions, finding that there were factual disputes about whether Lozano smelled of alcohol and what precisely he told the officers on the scene and at the police station. *Lozano*, 2020 WL 3542374, at *6–9, *17. The District Court ruled that if those disputes were resolved in Lozano's favor, there was not probable cause to arrest, detain, or charge him, and that because the law requiring probable cause was clearly established at the time, the officers were not entitled to qualified immunity. *Id.* at 11–13. As to Officer Hernandez in particular, the District Court ruled that by "transporting [Lozano] to police headquarters," he played an "integral" role in "the arrest," so he was not entitled to qualified immunity. *Id.* at *9, *17. Officer Hernandez appealed.

## II. Jurisdiction & Standard of Review

The District Court had jurisdiction over Lozano's federal claims under 28 U.S.C. § 1331 and his state law claims under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we also have "jurisdiction to review our own jurisdiction when it is in doubt," as we address below.

6

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 222 (3d Cir. 2007).

On the merits, we exercise plenary review of the District Court's summary judgment order. *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(a)). We must, of course, view the facts in the light most favorable to Lozano. *Id.*

## III. Discussion

Officer Hernandez argues that he was not involved in arresting or charging Lozano and therefore that he is entitled to qualified immunity. We agree. But before reaching the merits, we must address an open question regarding our jurisdiction.

### A. Collateral Order Jurisdiction

Because this is an interlocutory appeal and § 1291 only grants us jurisdiction over "final decisions of the district courts," 28 U.S.C. § 1291, we must assure ourselves of our jurisdiction with regard to each of Lozano's claims.

We clearly have jurisdiction over the § 1983 claims. Although § 1291 only provides jurisdiction over final orders, it is well settled that we have collateral order jurisdiction to review a summary judgment decision denying qualified immunity "to the extent that it turns on an issue of law."

7

*Mitchell v. Forsyth*, 472 U.S. 511, 529–30 (1985); *see also Dougherty*, 772 F.3d at 986. And Officer Hernandez raises only a pure question of law, as he contends that even taking "the set of facts identified by the district court" in the light most favorable to Lozano, *see Dougherty*, 772 F.3d at 986 (citation omitted), he is still entitled to qualified immunity as a matter of law.

We just as clearly lack jurisdiction over the common-law tort claim for malicious prosecution.[2] Officer Hernandez argues that he is entitled to "good faith" immunity for this claim under the TCA, N.J. Stat. Ann. § 59:3–3, but we have held that the TCA only provides immunity "as a defense to liability," not as an "immunity from suit," so a summary judgment order denying TCA immunity is not immediately appealable under the collateral order doctrine, *Brown v. Grabowski*, 922 F.2d 1097, 1107–09 (3d Cir. 1990); *see also Giuffre v. Bissell*, 31 F.3d 1241, 1248 (3d Cir. 1994). We will therefore dismiss Officer Hernandez's appeal for lack of appellate jurisdiction to the extent it challenges the District Court's order denying "good faith" immunity for Lozano's common-law tort claim.

---

[2] Although Lozano also brought common-law claims for false arrest and false imprisonment, **JA 26,** the District Court dismissed them for failure to provide timely pre-suit notice under the TCA. *Lozano*, 2020 WL 3542374, at *17; *see* N.J. Stat. Ann. § 59:8–8. Lozano's common-law malicious prosecution claim is therefore the only TCA claim at issue in this appeal.

We have never decided, however, whether we have collateral order jurisdiction over a summary judgment decision denying qualified immunity under the CRA. To answer that question, we must "inquir[e] into the nature of the qualified immunity that New Jersey law confers." *Grabowski*, 922 F.2d at 1106. If qualified immunity under the CRA provides immunity from suit, like qualified immunity under § 1983, then we have jurisdiction, but if it only provides immunity from liability, like good faith immunity under the TCA, then we must dismiss the CRA claims for lack of appellate jurisdiction. *See id.* at 1106.

Section 1983 provides the better analogy. Indeed, the New Jersey Supreme Court has explained that the CRA is "a state law analogue to Section 1983," *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014), so New Jersey courts apply qualified immunity in CRA claims by looking to "federal case law," *Morillo v. Torres*, 117 A.3d 1206, 1215 (N.J. 2015). They "do not differentiate between [CRA and § 1983] claims" for purposes of qualified immunity.[3] *Id.* at 1213. Thus,

---

[3] Officer Hernandez invokes "good faith" immunity under § 59:3–3 of the TCA against Lozano's CRA claims. But the New Jersey legislature did not "intend[] the TCA immunities to apply to actions brought under the [CRA]," *Ramos v. Flowers*, 56 A.3d 869, 874 (N.J. Super. Ct. App. Div. 2012), so Officer Hernandez's CRA defense is really a request for qualified immunity under the CRA, *see Morillo*, 117 A.3d at 1213.

9

because qualified immunity under § 1983 "is an immunity from suit," *Gormley v. Wood-El*, 93 A.3d 344, 367 (N.J. 2014), we conclude that qualified immunity under the CRA is also an immunity from suit, *see Brown v. State*, 165 A.3d 735, 743–44 (N.J. 2017) ("Qualified immunity [under the CRA] relieves an eligible defendant from the burden of trial."). We therefore have collateral order jurisdiction over summary judgment orders denying qualified immunity under the CRA insofar as they raise questions of law. *See Grabowski*, 922 F.2d at 1105–06; *Dougherty*, 772 F.3d at 986.

Having settled our jurisdiction, we turn now to the merits.

### B. Qualified Immunity

Officer Hernandez contends that he is entitled to qualified immunity for Lozano's claims for false arrest, false imprisonment, and malicious prosecution because he did not personally arrest or charge Lozano. Officer Hernandez is correct.

A police officer is entitled to qualified immunity under § 1983 unless the plaintiff shows that the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (citation and internal quotation marks omitted). We apply the same standard for qualified immunity under the CRA. *Morillo*, 117 A.3d at 1213–15.

10

To decide if an officer is entitled to qualified immunity, we use a two-prong test. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). At the first prong, we ask if the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At the second prong, we "ask whether the right was clearly established," *id.*, because "the contours of the right must be sufficiently clear such that the unlawfulness of the action [wa]s apparent in light of pre-existing law," *Dougherty*, 772 F.3d at 993 (citation and internal quotation marks omitted). We may address these two prongs in whichever order we find appropriate for the case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Additionally, because of the procedural posture here, "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Dougherty*, 772 F.3d at 986 (citation and internal quotation marks omitted). Rather, we may only "review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right." *Id.* (citation and internal quotation marks omitted). Under this standard, Officer Hernandez is entitled to qualified immunity for false arrest, false imprisonment, and malicious prosecution.

*i.* *False Arrest*

In a claim for false arrest, "a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard*, 973 F.3d at 199 (citation and internal quotation marks omitted). Lozano was clearly arrested, and the District Court found factual disputes about whether there was probable cause—a finding that is not before us at this stage of the litigation. *See Dougherty*, 772 F.3d at 986. But as Officer Hernandez correctly contends, the facts, even "[t]aken in the light most favorable to [Lozano]," do not "show [that Officer Hernandez's] conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.

According to the District Court, a reasonable jury could find that Officer Hernandez was "present" while Sergeant Dorilus was questioning Lozano and that after Sergeant Dorilus arrested Lozano, Officer Hernandez "transported Mr. Lozano to police headquarters." *Lozano*, 2020 WL 3542374, at *2, *9. Based on those facts, the District Court reasoned that Officer Hernandez was "involve[d] in the detention of Mr. Lozano" because even though he "was not the individual who actually placed the handcuffs on Mr. Lozano, he was the one who transported Lozano . . . to the police station." *Id.* at *9. And, the District Court said, "[t]ransportation to headquarters . . . may be regarded as an integral component of the arrest." *Id.*

Merely being present at the scene and driving the arrestee to the station, however, are not part of the arrest.

12

Neither the District Court nor Lozano have identified any conduct by Officer Hernandez while he was at the Wawa that could be considered part of the arrest, which was conducted entirely by Sergeant Dorilus. And driving Lozano to the police station was not a "component of the arrest," *id.*, it was simply one of "the administrative steps incident to arrest," *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Officer Hernandez therefore did not violate Lozano's right to be free from false arrest, so he is entitled to qualified immunity under both § 1983 and the CRA.

## ii. *False Imprisonment*

To succeed in a false imprisonment claim, a plaintiff must show that "the police lack[ed] probable cause to make an arrest" and that the plaintiff was "det[ained] pursuant to that arrest." *Harvard*, 973 F.3d at 202. Here, Officer Hernandez did "detain[]" Lozano while driving him to the station, and the District Court found factual disputes about whether "the police lack[ed] probable cause to make [the] arrest." *See id.* Nevertheless, we can easily address this claim at the second prong of the qualified immunity test—namely, whether a reasonable officer in Officer Hernandez's position would have known that probable cause was lacking. Put another way, was it "objectively reasonable" for Officer Hernandez to believe that probable cause existed for Lozano's detention? *See Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997).

We conclude that it was. Sergeant Dorilus was standing closer to Lozano, he spoke with Lozano at length, and he said

13

that Lozano "reeked of alcohol." *Lozano*, 2020 WL 3542374, at \*2. Lozano also did not answer Sergeant Dorilus's question about his address, instead pointing to his driver's license, and Lozano refused, albeit perhaps justifiably in retrospect, to perform a field sobriety test. *Id.* Even viewing the facts in the light most favorable to Lozano, we cannot conclude that Officer Hernandez—who was standing farther away than Sergeant Dorilus and had much less interaction with Lozano—was objectively unreasonable in his belief that there was a basis for Lozano's continued detention. *See Rogers*, 120 F.3d at 456.

Ultimately, officers are entitled to qualified immunity when they "reasonably but mistakenly conclude that probable cause is present," *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), and under that standard, Officer Hernandez did not violate a clearly established right of which every reasonable officer would have known, *see Peroza-Benitez*, 994 F.3d at 165. He is therefore entitled to qualified immunity against Lozano's claims for false imprisonment under both § 1983 and the CRA.[4]

---

[4] To the extent Lozano's false arrest claim can be interpreted as a failure-to-intervene claim, it would also fail for these same reasons. Lozano cites *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002), for the proposition that "a non-intervening officer[]" may be liable for "stand[ing] by and watch[ing] . . . a constitutional violation," Appellee's Supp. Br. 3 (quoting *Mensinger*, 293 F.3d at 651). But *Mensinger* arose in the

14

### iii. *Malicious Prosecution*

Finally, to prevail in a claim for malicious prosecution, "a plaintiff must demonstrate that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Harvard*, 973 F.3d at 203 (alteration in original) (citation and internal quotation marks omitted).

Here, however, there is no evidence that Officer Hernandez "participated in initiating criminal proceedings" against Lozano. *See id.* at 205 n.7. According to the District Court, the record shows that Sergeant Dorilus charged Lozano,

context of excessive force, *see* 293 F.3d at 650–51, and while the Sixth Circuit has extended failure-to-intervene liability to the false arrest context, holding that an officer is liable if he "observes or has reason to know" of a false arrest and has "a realistic opportunity to intervene," *Bunkley v. City of Detroit*, 902 F.3d 552, 565–66 (6th Cir. 2018), we have not done so to date. Nor need we today because, for the reasons we have explained, it was not objectively unreasonable for Officer Hernandez to believe there was probable cause, so he would be entitled to qualified immunity in any event. *See Anderson*, 483 U.S. at 641; *Rogers*, 120 F.3d at 454–56.

15

*see Lozano*, 2020 WL 3542374, at \*3, and neither Lozano's briefing nor the District Court's opinion have identified any factual basis for holding Officer Hernandez liable for charging Lozano. Officer Hernandez therefore did not violate Lozano's right to be free from malicious prosecution, *see Harvard*, 973 F.3d at 205 n.7, and he is entitled to qualified immunity under § 1983 and the CRA.

### IV.    Conclusion

For the foregoing reasons, we will reverse the District Court's order denying Officer Hernandez qualified immunity for the § 1983 and CRA claims, and we will dismiss this appeal for lack of appellate jurisdiction with regard to the TCA claim.