**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2363
_____

CRYSTAL DAWN WEIMER

v.

COUNTY OF FAYETTE, PENNSYLVANIA;
OFFICE OF THE FAYETTE COUNTY DISTRICT ATTORNEY;
NANCY VERNON, in her official and individual capacities;
RONALD HAGGERTY, JR.;
THOMAS CESARIO;
THOMAS W. PATTON;
BEVERLY ASHTON, in their individual capacities;
CITY OF CONNELLSVILLE

Thomas Cesario,
Appellant
_____

On Appeal from the District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:17-cv-1265)
Magistrate Judge:  Honorable Maureen P. Kelly
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a):
October 20, 2023
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, PHIPPS and CHUNG, <u>Circuit</u> <u>Judges</u>

(Filed: November 2, 2023)

_____

OPINION[*]

_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

Defendant Thomas Cesario appeals from the District Court's denial of his motion

for summary judgment based on qualified immunity and state-law official immunity.

Plaintiff Crystal Weimer alleged that Cesario, the retired lead investigator in the murder

for which Weimer was prosecuted, is liable for malicious prosecution and related claims

under 42 U.S.C. § 1983 and Pennsylvania law. Because the District Court erred as a

matter of law on whether a clearly established right existed and whether Cesario was

entitled to official immunity under Pennsylvania law, we will reverse the District Court's

order in part.[1]

I.

We write primarily for the parties and recite only the facts essential to our

decision.[2] Crystal Weimer spent more than eleven years in prison for the murder of

Curtis Haith. In 2001, police found Haith beaten and shot in the face, lying dead on the

sidewalk in front of his apartment. Cesario led the initial investigation of Haith's murder.

Cesario and his team, including officer Ronald Haggerty, Jr., obtained blood and hair

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The District Court's rulings in the same order with respect to other defendants are not the subject of this appeal.

[2] Our previous opinion resolved immunity issues with respect to only District Attorney Nancy Vernon. <u>See</u> <u>Weimer v. Cnty. of Fayette</u>, 972 F.3d 177 (3d Cir. 2020). This opinion recounts the facts essential to Cesario's appeal.

samples from Haith and discovered drug-related evidence inside his apartment. They interviewed people who had attended parties with Haith earlier that evening, including Weimer, who had given Haith a ride at some point that evening. Police observed that Weimer had injuries to her face and foot and was wearing clothes that looked muddy and bloody. Weimer provided her clothes to the police for forensic testing. Early testing showed that the blood on Weimer's clothes was consistent with Haith's. Cesario obtained a search warrant to obtain samples of Weimer's blood.[3]

Meanwhile, police conducted other witness interviews and collected information about potential suspects. Cesario provided District Attorney Vernon updates of the evidence gathered as to Weimer, but not other suspects or leads such as information related to Haith's drug activity. In September 2002, Cesario retired from the Connellsville Police Department. No charges had been filed against Weimer; in fact, Cesario believed there was no probable cause to charge anyone for the Haith murder.

Haggerty took over as lead investigator upon Cesario's retirement. Haggerty requested assistance from the Pennsylvania State Police cold case squad. A member of the squad noticed a bite mark on Haith's hand from his autopsy photograph. Haggerty obtained a report from a forensic odontologist opining that Weimer's dental mold matched the bite mark on Haith. Haggerty also interviewed several other individuals,

---

[3] DNA testing revealed that the blood on Weimer's clothes did not match Haith and that no biological evidence connected Weimer to the crime scene. It is unclear whether Cesario learned of these test results before he retired. Compare Appendix ("App.") 14 (District Court finding that he did), with Appellee Br. 7 (Weimer claiming that the test occurred after Cesario retired). In any event, adoption of the District Court's finding makes no difference to the outcome here.

including Thomas Beal, Conrad Blair, and Joseph Stenger, who provided information tying Weimer to the murder.

Weimer was arrested in January 2004 and charged with Haith's murder. At this point, Cesario had been retired for more than a year and had no personal involvement in the charging decision. After a judge dismissed those charges for insufficient evidence, Weimer was charged again, and this time her case went to trial. A jury found her guilty of third-degree criminal conspiracy and third-degree homicide. She was sentenced to fifteen to thirty years in prison. Weimer's convictions were ultimately vacated based on recanted testimonies, and all charges against her were dismissed with prejudice.

Weimer brought suit against Cesario alleging, as relevant here, malicious prosecution, civil rights conspiracy, and supervisory liability under section 1983, and malicious prosecution under Pennsylvania law. Cesario moved for summary judgment based on qualified immunity from the section 1983 claims and official immunity under Pennsylvania statute from the state-law claim. The District Court found disputed facts in the record and concluded that Cesario was not entitled to immunity from any of these claims.[4] Cesario timely appealed.

---

[4] With the parties' consent, Magistrate Judge Maureen P. Kelly conducted the proceedings in this matter. We refer to the Magistrate Judge as the District Court throughout this opinion.

II.

A.

We must first consider whether we have jurisdiction to hear this appeal. In

Johnson v. Jones, 515 U.S. 304, 311 (1995), the Supreme Court held that "a district

court's order denying a defendant's motion for summary judgment [i]s an immediately

appealable 'collateral order'" where "the issue appealed concerned, not which facts the

parties might be able to prove, but, rather, whether or not certain given facts showed a

violation of 'clearly established' law." (citation omitted). Here, Cesario appeals only the

District Court's "legal conclusion" that he was not entitled to qualified immunity based

on its view of the record. ECF No. 13 at 11. We therefore have jurisdiction to review

this question of law. Lozano v. New Jersey, 9 F.4th 239, 244 (3d Cir. 2021).

We also have jurisdiction to review the denial of Cesario's state immunity

defense. We have determined that "a denial of state immunity is an appealable final

order under the collateral order doctrine," El v. City of Pittsburgh, 975 F.3d 327, 334 (3d

Cir. 2020), so long as "the state has conferred an underlying substantive immunity from

suits arising from the performance of official duties," Rivas v. City of Passaic, 365 F.3d

181, 193 (3d Cir. 2004) (citation omitted). In other words, we can review the denial of

state immunity when the nature of that immunity is "immunity from suits, rather than

mere immunity from liability." In re City of Phila. Litig., 49 F.3d 945, 957 (3d Cir.

1995). The Supreme Court of Pennsylvania has held that immunity under the

Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") — which Cesario

invokes — is "an immunity from suit rather than a mere defense to liability." Dorsey v.

5

<u>Redman</u>, 96 A.3d 332, 344 (Pa. 2014) (citation omitted).  Thus, we have jurisdiction to review the state immunity issue.

B.

We turn now to the merits.  "Qualified immunity protects government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 287 (3d Cir. 2014) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  The PSTCA grants official immunity to municipal employees acting in good faith within the scope of their official duties.  42 Pa. Cons. Stat. § 8546.  We hold that Cesario is entitled to qualified immunity from Weimer's section 1983 claims as well as official immunity from Weimer's state-law malicious prosecution claim.  We will examine each immunity defense in turn.[5]

1.

Cesario argues that the District Court erred in denying him qualified immunity from Weimer's section 1983 malicious prosecution claim.  We agree because any right that Cesario's action (or inaction) may have violated was not clearly established in 2002.  The District Court framed the right in question as "[t]he right to be free from prosecutions on criminal charges that lack probable cause."  App. 35 (citing <u>Donahue v.</u>

---

[5] We exercise plenary review of an order denying qualified immunity at the summary judgment stage.  <u>Goodwin v. Conway</u>, 836 F.3d 321, 326 n.16 (3d Cir. 2016).  We review a state-law official immunity ruling under the same standard.  <u>LaVerdure v. Cnty. of Montgomery</u>, 324 F.3d 123, 125 (3d Cir. 2003).

6

Gavin, 280 F.3d 371, 380 (3d Cir. 2002)).  But the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  Mullenix v. Luna, 577 U.S. 7, 12 (2015) (citation omitted).  This level of specificity "is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'"  Id. (quoting Saucier v. Katz, 533 U.S. 194, 205 (2001)).  A more appropriate framework in this case is whether it was clearly established in 2002 that an officer is liable for malicious prosecution for failing to disclose potentially exculpatory evidence or investigative leads to the prosecutor before any charging decision has been made.

The District Court did not identify any appellate authority from 2002 or earlier to show a clearly established right in this context.  Our decision in Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014), offers too little, too late.  There, we ruled that "[i]f the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution."  Id. at 297 (citing Sykes v. Anderson, 625 F.3d 294, 308–09, 317 (6th Cir. 2010)).  Not only did we decide Halsey well after 2002, but in that case we also declined to delineate the extent to which police officers' actions could subject them to a claim for malicious prosecution.  See id. at 297 n.22 (declining to prescribe "how strong the connection must be between a police officer's misconduct and the defendant's eventual prosecution for the officer to be liable in a malicious prosecution action," but noting that it sufficed that the officer's misconduct in supplying the prosecutor a false confession "was a significant cause of the prosecution").

7

We fail to see how any reasonable officer in Cesario's position would know that his investigatory conduct would significantly cause Weimer's prosecution without probable cause, when it is undisputed that Cesario retired in 2002 without probable cause to charge Weimer and that numerous developments occurred in the years between his retirement and Weimer's eventual arrest and prosecution. Put another way, the law in 2002 did not place the constitutional significance of Cesario's conduct "beyond debate." Weimer, 972 F.3d at 192 (quoting Plumhoff v. Rickard, 572 U.S. 765, 779 (2014)). Cesario is thus entitled to qualified immunity from Weimer's section 1983 malicious prosecution and conspiracy claims. See Black v. Montgomery Cnty., 835 F.3d 358, 372 n.14 (3d Cir. 2016) ("Because the District Court reasoned that [the plaintiff] could not succeed on her underlying Fourth Amendment malicious prosecution or Fourteenth Amendment due process claims, it correctly determined that she could not succeed on her conspiracy claims.").

We reach the same conclusion with respect to Weimer's section 1983 supervisory liability claim. A government official is liable only for his own conduct — respondeat superior or vicarious liability will not do. Argueta v. U.S. Immigr. & Customs Enf't, 643 F.3d 60, 71 (3d Cir. 2011). Neither Weimer nor the District Court identified any clearly established law as of 2002 requiring a supervising officer (Cesario) to ensure that a subordinate (Haggerty) exhaust all potential investigative leads and report them to the prosecutor before any charging decision has been made. Cesario is accordingly entitled to qualified immunity from this claim.

## 2.

Finally, we conclude that Cesario is entitled to official immunity under the PSTCA. The District Court determined that Cesario was not entitled to official immunity under the PSTCA because the record supported a finding that he engaged in "willful misconduct," thus abrogating his official immunity under the PSTCA. "'Willful misconduct,' as used in [the PSTCA], requires evidence that the defendants actually knew that their conduct was illegal." Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 600–01 (3d Cir. 1998) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293–94 (Pa. 1994)). In this case, even if Cesario engaged in misconduct, the District Court did not identify any facts in the record showing that Cesario "actually knew that [his] conduct was illegal." Id. at 601. Thus, Cesario is entitled to official immunity from the state-law malicious prosecution claim.

## III.

For the foregoing reasons, we will reverse the portion of the District Court's order denying Cesario summary judgment on Weimer's section 1983 and state-law claims.

9