**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2405
_____

OLUTOKUNBO EFUNNUGA,
                                        Appellant

v.

STEVEN FARLEY; ERIC LEE; JEFFREY GILSON; STEVEN BLACKWELL;
RICHARD ROSS

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-00924)
District Judge:  Honorable Paul S. Diamond

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 6, 2024

Before:  BIBAS, PORTER, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed: June 18, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Olutokunbo Efunnuga, also known as Shawn Mobley, appeals pro se from the District Court's July 13, 2023 decision granting summary judgment against him in this civil rights case. For the reasons that follow, we will affirm that decision in part, vacate it in part, and remand for further proceedings.

I.

Because Efunnuga appeals from a grant of summary judgment, we construe the facts in the light most favorable to him. See Tundo v. County of Passaic, 923 F.3d 283, 287 (3d Cir. 2019). Efunnuga served as the property manager of a small apartment building ("the Property") in northwest Philadelphia. The basement of the Property "was generally under [his] control." Dist. Ct. Dkt. No. 131, at 81. The basement was secured by a metal gate that had a lock and chain. Efunnuga had the only key to that lock.

On the night of March 1, 2016, Efunnuga went to the Property to disconnect the electricity to one of the units because the tenants in that unit had failed to pay their rent. Efunnuga had previously disconnected the electricity to that unit, but at some point, the tenants had managed to access the basement and restore service. Upon Efunnuga's arrival on March 1, he met with Ibrahim Howard, who assisted in maintaining the Property. Efunnuga learned from Howard that the lock and chain on the gate had been broken, and that Howard had replaced them with a lock and chain of his own. Howard unlocked the gate for Efunnuga, who proceeded into the basement.

As Efunnuga disconnected the electricity again, tenants and other individuals confronted him in the basement, and a fistfight ensued. Multiple people, including

2

Efunnuga, called 911. Philadelphia police officers Steven Farley and Eric Lee were the first to arrive on the scene. By that point, the altercation had morphed from a fistfight into a "heated argument" and moved outside the building. The officers separated Efunnuga from the group, frisked him, removed his wallet from his pocket, and questioned him for a few minutes.

Farley told Efunnuga that it was illegal to disrupt utility service and ordered him to leave the premises. In response, Efunnuga said that he "had every legal right to be there and also to disrupt the electricity, as it was in the name of the landlord." Dist. Ct. Dkt. No. 124-2, at 4. Farley ran a database check and learned that Efunnuga was on federal supervised release. Farley told Efunnuga that "if [Efunnuga] didn't get outta [t]here now, [Farley] would send [Efunnuga's] ass to jail for violating." Id. (internal quotation marks omitted). Efunnuga then told the officers that he needed to return to the basement to retrieve his tools and keys.

As Efunnuga approached the basement, he noticed that the gate had been re-locked. He then demanded that Howard unlock the gate. Howard did so, and then Efunnuga proceeded into the basement. About 30 to 45 seconds later, Farley entered the basement unannounced and, with the aid of his flashlight, helped Efunnuga find his belongings. The two men then left the basement. On the way out, Efunnuga closed the basement's interior door and then shut the gate.

Next, Howard asked Efunnuga if he had a heavier chain to secure the gate. Efunnuga "shook [his] head in acknowledgment" and, without saying anything, walked past Farley and headed toward his (Efunnuga's) truck, which was parked about 10 car

3

lengths from the officers' vehicle. At some point after Efunnuga walked to his truck, Farley reentered the basement on his own to find something to secure the gate. As Farley looked around, he smelled marijuana and then observed a large quantity of packaging materials, a digital scale, and a plastic bag containing a "green weed and seed substance." Farley subsequently exited the basement and located Efunnuga, who was walking back toward the Property carrying a chain that he had obtained from his truck. At that point, Farley arrested Efunnuga.

Efunnuga was subsequently charged in the Philadelphia County Court of Common Pleas with multiple drug-related offenses. In March 2018, the trial court held a bench trial and acquitted him of all those charges. Around the same time, Efunnuga commenced this civil action in the District Court. His fourth amended complaint ("the FAC"), which is the operative pleading, was brought against Farley and Lee ("Appellees") and set forth 11 counts.[1] Collectively, those counts raised a host of constitutional and state-law claims stemming from, inter alia, the events of March 1, 2016. Some of the counts included multiple claims.

Eventually, Appellees moved for summary judgment. Efunnuga, who had retained an attorney after the close of discovery, filed a counseled opposition to that motion. On July 13, 2023, the District Court granted Appellees' motion, concluding that Efunnuga's constitutional claims lacked merit, and declining to exercise supplemental

---

[1] Although the FAC's last count was labeled "Count XII," that count was actually the eleventh count, for there was no "Count XI." For the purposes of this opinion, we refer to Count XII as "Count XI."

4

jurisdiction over his state-law claims. About three weeks later, Efunnuga filed this pro se appeal.

Efunnuga subsequently filed a pro se motion in the District Court pursuant to Federal Rule of Civil Procedure 60, arguing that the District Court's summary-judgment decision failed to address one of his claims raised in Count VI. That claim alleged that Farley had violated Efunnuga's Fourth Amendment rights in connection with an incident that took place on May 5, 2016. On January 4, 2024, the District Court examined the merits of that claim, concluded that the claim could not survive summary judgment, and denied Efunnuga's Rule 60 motion. Thereafter, Efunnuga did not file a new notice of appeal or amend his original notice of appeal to include a challenge to the January 4, 2024 decision.[2]

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[3] Before delving into the merits of this appeal, we outline the scope of our review.

---

[2] It would now be too late for Efunnuga to amend his notice of appeal or file a new one. See Fed. R. App. P. 4(a)(1)(A) (providing for 30-day appeal period).

[3] Assuming for the sake of argument that this appeal was premature when Efunnuga filed it (due to the fact that the District Court's July 13, 2023 decision had not specifically addressed his Fourth Amendment claim relating to the May 5, 2016 incident), the appeal ripened when the District Court disposed of that claim in its January 4, 2024 decision. See ADAPT of Phila. v. Phila. Hous. Auth., 433 F.3d 353, 362 (3d Cir. 2006) (explaining that, in Cape May Greene, Inc. v. Warren, 698 F.2d 179 (3d Cir. 1983), "this [C]ourt held that a premature notice of appeal, filed after disposition of some of the claims before a district court, but before entry of final judgment, will ripen upon the court's disposal of the remaining claims").

The District Court's July 13, 2023 decision is the only decision before us.[4] Efunnuga's appellate brief does not challenge that decision's resolution of Counts I, II, III, VII, VIII, IX, X, or XI. Accordingly, we deem those counts forfeited. See Savage, 970 F.3d at 280 n.70. We also deem forfeited the part of Count V that raised an abuse-of-process claim. The District Court concluded that Efunnuga had abandoned that part of Count V, and his appellate brief includes only a passing reference to that conclusion. See id.; 3d Cir. Dkt. No. 21, at 7.

All that remains are Count IV, part of Count V, and part of Count VI.[5] We exercise de novo review over the District Court's resolution of these counts on summary judgment. See Tundo, 923 F.3d at 286. "A district court properly grants summary judgment if the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. at 286-87 (quoting Fed. R. Civ. P. 56(a)). In conducting our review, "[w]e view the facts in the light most

---

[4] Although Efunnuga's notice of appeal also referred to a 2019 decision entered by the District Court in this case, he has forfeited any challenge to that decision by not addressing it in his appellate brief. See United States v. Savage, 970 F.3d 217, 280 n.70 (3d Cir. 2020) (indicating that an appellant forfeits an issue if he fails to raise it in his opening brief or makes only a passing reference to it in that brief). Additionally, because he did not amend his notice of appeal or file a new notice of appeal after the District Court entered its January 4, 2024 decision, that decision, and the part of Count VI that it disposed of, are not before us. See Marshall v. Comm'r Pa. Dep't of Corr., 840 F.3d 92, 96 (3d Cir. 2016) (indicating that application of the Cape May Greene doctrine does not trigger review of "subsequent rulings made after the filing of the notice of appeal").

[5] To the extent that Appellees argue that Efunnuga forfeited Count IV and the remainder of Count V, we find this argument unpersuasive in view of the fact that Efunnuga discussed these counts at length in his brief.

favorable to the non-moving party and [draw] all reasonable inferences in that party's favor." Id. at 287 (second alteration in original) (internal quotation marks omitted).

## III.

Count IV and the remaining part of Count V collectively allege claims of false arrest, false imprisonment, and malicious prosecution. To prevail on a claim for false arrest or false imprisonment, the plaintiff must show, inter alia, that the police lacked probable cause to arrest him. See Lozano v. New Jersey, 9 F.4th 239, 245-46 (3d Cir. 2021). And to prevail on a claim for malicious prosecution, the plaintiff must show, inter alia, that a criminal proceeding was initiated against him without probable cause. See id. at 247. For substantially the reasons provided by the District Court, we conclude, as a matter of law, that there was indeed probable cause to arrest and charge Efunnuga in connection with the drug-related items discovered by Farley in the Property's basement. See Dist. Ct. Dkt. No. 143, at 12-13. See generally District of Columbia v. Wesby, 583 U.S. 48, 57 (2018) ("Probable cause is not a high bar." (internal quotation marks omitted)). Accordingly, we will affirm the District Court's grant of summary judgment on these claims.

The balance of this opinion addresses what remains of Count VI. The remainder of this count, liberally construed, challenges the frisk conducted by Appellees on March 1, 2016, and Farley's two warrantless entries into the basement on that date.

We begin with Farley's two entries into the basement. "The Fourth Amendment prohibits unreasonable searches and seizures." United States v. Stabile, 633 F.3d 219, 230 (3d Cir. 2011). Generally, the police's "warrantless entry into a person's house is

7

unreasonable *per se*." Id. (citation to quoted case omitted). However, if an individual "who possesses common authority over [the] premises" consents to the police's warrantless entry, that entry does not violate the Fourth Amendment. See id. We consider the totality of the circumstances when determining whether an individual has given consent for Fourth Amendment purposes. See Reedy v. Evanson, 615 F.3d 197, 225 (3d Cir. 2010).

Here, it is undisputed that Efunnuga had the authority to consent to the police's entry into the basement. Where the dispute lies is whether Efunnuga indeed exercised that authority. The District Court concluded that, because Efunnuga did not object when Farley followed him into the basement, he (Efunnuga) implicitly consented to that entry. **Dist. Ct. Dkt. No. 143, at 10-11.** The District Court also concluded that, "once Farley's first, lawful basement entry occurred, [Efunnuga] lost any reasonable expectation of privacy in the [basement]," thereby allowing Farley to "later[] re-enter the [basement] to observe the contraband without separately violating the Fourth Amendment." Dist. Ct. Dkt. No. 143, at 11 (last alteration in original) (internal quotation marks omitted).

We disagree with these conclusions. First, viewing the facts in the light most favorable to Efunnuga, the totality of the circumstances does not support a determination that he consented to Farley's first entry into the basement. According to Efunnuga, Farley entered the basement unannounced about 30 to 45 seconds after Efunnuga went there to retrieve his tools and keys. The mere fact that Efunnuga did not object to that entry is not sufficient to show consent. See Fuqua v. Turner, 996 F.3d 1140, 1152 (11th Cir. 2021) ("[A]n officer does not obtain valid consent to search a home merely because

8

the homeowner fails to verbally or physically object to his entering the home."); see also Smith v. Lee, 73 F.4th 376, 381 (5th Cir. 2023) ("Implicit consent can be inferred from silence or failure to object to a search only if that silence follows a request for consent." (internal quotation marks omitted)).  And since Efunnuga did not consent to Farley's first entry, we cannot conclude, as a matter of law, that Farley's *second* entry into the basement was lawful.  Accordingly, Appellees were not entitled to summary judgment on this part of Count VI.[6]

Finally, we turn to Count VI's challenge to the frisk that took place on March 1, 2016, when Appellees first arrived at the Property.  This claim, liberally construed, argues that (1) there was no justification for a frisk in that situation, and (2) even if the frisk was justified as a general matter, the *extent* of that frisk — specifically, Appellees' removal of Efunnuga's wallet from his pocket — violated his Fourth Amendment rights. For substantially the reasons provided by the District Court, we agree with the District

---

[6] Appellees' summary-judgment motion argued that judgment in their favor was warranted on this part of Count VI not only on the merits, but also pursuant to the doctrine of collateral estoppel.  In support of this latter argument, Appellees pointed to the fact that Efunnuga had filed an unsuccessful motion to suppress in his criminal case. The District Court's summary-judgment decision acknowledged Appellees' collateral-estoppel argument but did not rule on it.  There is no need for the District Court to revisit that argument on remand, for the argument fails because Efunnuga was acquitted in his criminal case.  See, e.g., Bradley v. Reno, 749 F.3d 553, 558-59 (6th Cir. 2014) (collecting cases for the proposition "that when an acquittal prevents a criminal defendant from appealing a ruling, the ruling has no preclusive force"); Restatement (Second) of Judgments § 28 cmt. a (Am. L. Inst. 1982) ("If review is unavailable because the party who lost on the issue obtained a judgment in his favor, the general rule of [collateral estoppel] is inapplicable by its own terms."); see also Commonwealth v. Thevenin, 948 A.2d 859, 863 (Pa. Super. Ct. 2008) ("[A]n appeal by a defendant from an adverse suppression ruling is not heard until after sentencing.").

Court that Appellees were entitled to summary judgment on the first part of this claim. See Dist. Ct. Dkt. No. 143, at 7-8. But the District Court did not address the second part of this claim. "We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance." Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F.3d 395, 401 (3d Cir. 2010). We see no compelling reason to depart from that general practice here, especially since we are already remanding this case for further proceedings. Accordingly, on remand, the District Court should consider Efunnuga's contention that Appellees' removal of his wallet from his pocket during the frisk violated the Fourth Amendment.

IV.

In view of the above, we will vacate the District Court's July 13, 2023 decision in part and remand for further proceedings with respect to the parts of Count VI concerning (a) Farley's two entries into the basement on March 1, 2016, and (b) Appellees' removal of Efunnuga's wallet during the frisk conducted on March 1, 2016. As for the remainder of the District Court's July 13, 2023 decision, we will affirm.